UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AARON LEON RIGGS, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-01373-JPH-TAB |
| | ) | |
| THOMAS MILLIKAN Dr., | ) | |
| CENTURION HEALTH OF INDIANA LLC., | ) | |
| JOHNSON LPN, | ) | |
| HEINMANN Ms. (Mental Health), | ) | |
| JACOBS Ms., | ) | |
| RUNYAN Ms., | ) | |
| THE GEO GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER SCREENING COMPLAINT, DENYING PENDING MOTIONS,
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Aaron Riggs, II, is a prisoner currently incarcerated at New Castle Correctional Facility ("New Castle"). He filed this civil action alleging defendants have been deliberately indifferent to a serious medical need in violation of the Eighth Amendment. Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). The Court also addresses and **DENIES** Mr. Riggs's motions for appointment of a medical expert and for counsel. Dkts. [2], [3].

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same

1

standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Riggs's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). The complaint names as defendants (1) Dr. Thomas Millikan; (2) Centurion Health of Indiana LLC; (3) LPN Johnson; (4) mental health provider Ms. Heinmann; (5) Assistant Health Services Administrator ("AHSA") Ms. Jacobs; (6) AHSA Ms. Runyan; and (7) The Geo Group (the private contractor that operates New Castle). Mr. Riggs is seeking compensatory and punitive damages.

The complaint alleges that on or around September 16, 2024, Mr. Riggs awoke with severe pain, numbness, and tingling in his neck, spine, shoulder, arm, and left hand. He suspected he might have injured himself the night before playing pickleball. Mr. Riggs reported his symptoms to a correctional officer, who took him to medical. Dr. Millikan examined and questioned Mr. Riggs, who told

2

Mr. Riggs that he probably had pulled a shoulder muscle and there was no treatment for such an injury. Mr. Riggs told Dr. Millikan that his pain level was 10 out of 10 and suspected there was something more severe than a pulled muscle causing the pain, but Dr. Millikan was dismissive of Mr. Riggs and sent him back to his unit.

Mr. Riggs attempted to treat himself with ibuprofen and Tylenol from commissary, plus heat and ice, but nothing helped the pain. On September 18, Mr. Riggs submitted a healthcare request form ("HCRF") and was seen again by Dr. Millikan. Dr. Millikan refused Mr. Riggs's request for an MRI and continued to tell Mr. Riggs that he had a pulled muscle. He also told Mr. Riggs "that it was a waste of time for him to seek pain medication in his office." Dkt. 1 at 7. He submitted another HCRF on September 29, that went unanswered, and another on October 13. On or about October 15, Mr. Riggs had an x-ray and an ultrasound of his shoulder taken. Dr. Millikan told Mr. Riggs that they did not show any source for his pain. Mr. Riggs told Dr. Millikan that he was still experiencing pain, numbness, tingling, and loss of motor control; Dr. Millikan responded that they "were a figment of Riggs's imagination" and threatened to write a conduct report for malingering if he did not stop complaining about his symptoms. *Id.* at 8. However, Mr. Riggs obtained a copy of the x-ray report shortly thereafter and discovered Dr. Millikan had lied about what it showed.[1] Mr. Riggs

---

[1] Mr. Riggs has attached exhibits to his complaint, and the Court has exercised its discretion to consider them when screening his complaint. *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013) (the court may consider "documents that are attached to the complaint, documents that are central to the complaint and referred to in it."). The x-ray report from October 15, 2024, states, "Impression: Cervical spondylosis and

sent several requests to speak with Dr. Millikan about the report but never received a response.

Mr. Riggs continued to experience severe pain and other symptoms. He attempted to speak with a mental health provider, Ms. Ingalls, about the psychological problems the pain was causing him, but she refused to treat him because his symptoms were purely physical. Mr. Riggs continued submitting HCRFs and seeing nurses, but his symptoms continued to worsen. On May 30, 2025, he wrote AHSA Runyan about what he needed to do to see a doctor. On June 16, Mr. Riggs was seen by a nurse practitioner, who said his symptoms indicated a neurological condition. The nurse practitioner referred Mr. Riggs to physical therapy, which only worsened his pain.

On October 10, Mr. Riggs had an MRI of his cervical spine. Mr. Riggs did not learn about the results until December 29, when he met again with Dr. Millikan. Dr. Millikan told Mr. Riggs he was being referred to a neurosurgeon because he did have a problem in his cervical spine—ossification of the posterior longitudinal ligament that was compressing his spinal cord. However, Dr. Millikan advised Mr. Riggs not to have surgery, and that the surgeon would try to convince Mr. Riggs to have surgery because the Department of Correction was guaranteed to pay for it. Mr. Riggs told Dr. Millikan that his pain and other symptoms were only increasing, and Dr. Millikan responded by saying he could

---

osteopenia without acute or other chronic skeletal disease, but evidence for neck pain, spasm, or both." Dkt. 1-1 at 5.

not help him and sent him back to his unit. Dr. Millikan prescribed some kind of medication for Mr. Riggs at this visit, but it was ineffective in treating his pain.

On January 23, 2026, Mr. Riggs saw LPN Johnson. She told Mr. Riggs that she would not schedule another appointment for Mr. Riggs with Dr. Millikan, because Dr. Millikan would not want to see him and would not change his treatment or medication. Mr. Riggs saw LPN Johnson again on several other dates in 2026; each time, LPN Johnson told him either that Dr. Millikan would refuse to see him or that she would attempt to schedule an appointment for him. However, when LPN Johnson did say she would attempt to schedule an appointment with Dr. Millikan, Mr. Riggs never ended up actually having an appointment. At one point, when Mr. Riggs complained that he had been waiting for months to see the neurosurgeon, LPN Johnson told him that Centurion was attempting to save money by delaying his care, because he was due to be released from prison soon.

On April 15, 2026, Mr. Riggs had an outside appointment with neurosurgeon Dr. Yuk. Dr. Yuk told Mr. Riggs that he was suffering from spinal cord compression and needed decompression surgery as soon as possible. Dr. Yuk also said that Mr. Riggs should have been evaluated by a neurologist when he first began experiencing his symptoms, and that the delay in diagnosing the condition and having surgery likely resulted in irreversible damage and that Mr. Riggs's symptoms would likely be permanent. Dr. Yuk said he would personally call Mr. Riggs's facility and try to arrange to have the surgery within two weeks.

5

However, as of the date Mr. Riggs signed his complaint, June 18, he had not yet received the surgery, nor received any word as to when or whether it would be scheduled. He has submitted multiple grievances about the failure to receive timely medical care. In May 2026, Mr. Riggs attempted to receive mental health treatment from telehealth provider Ms. Heinmann, for the depression and anxiety that his chronic pain was causing. She refused to provide any assistance because Mr. Riggs's problem was purely physical, and he needed to obtain treatment from Dr. Millikan. Mr. Riggs did attempt to obtain an appointment with Dr. Millikan after this visit but did not get one.

### III. Discussion of Claims

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

First, private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). To state a *Monell* claim, the plaintiff must identify an action taken by the municipality and allege a causal link between the municipality's action and the deprivation of federal rights. *Dean*, 18 F.4th at 235. "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir.

2019). Mr. Riggs has not identified any policy, practice, or custom of Geo Group that caused him any injury. All claims against Geo Group **are dismissed**.

Second, Mr. Riggs lists AHSA Jacobs as a defendant at the outset of his complaint, but the complaint does not contain allegations about her. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citation omitted). All claims against AHSA Jacobs **are dismissed**.

Third, Mr. Riggs's complaint only contains one allegation about AHSA Runyan: that on one occasion he wrote to her asking what he needed to do to see a doctor. Approximately two weeks later, he was seen and treated by a nurse practitioner. Mr. Riggs has not alleged that the nurse practitioner provided inadequate medical treatment. In order for an inmate to state a claim under 42 U.S.C. § 1983 for medical mistreatment or the denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (construing Estelle). Also, "individual liability under § 1983 . . . requires personal involvement in the alleged constitutional

deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* There are insufficient allegations that AHSA Runyan had any direct or personal involvement with the adequacy of the medical care Mr. Riggs received.

Fourth, Mr. Riggs raises claims against LPN Johnson arising from her seeing him several times throughout 2026. She repeatedly told him she would try to schedule an appointment with him with Dr. Millikan, or indicated it would be fruitless to try to schedule an appointment because Dr. Millikan would not change his treatment plan. Mr. Riggs does not allege LPN Johnson herself refused him care, or did anything other than pass on Dr. Millikan's statements that he would not see Mr. Riggs or treat Mr. Riggs differently. Indeed, Indiana law confirms that LPNs—or licensed practical nurses—"function[] at the direction of . . . a registered nurse; or a physician with an unlimited license to practice medicine or osteopathic medicine . . . in the performance of activities commonly performed by practical nurses . . . ." Ind. Code § 25-23-1-1.2; *see* Ind. Code § 25-23-1-1.3. These professional duties do not include diagnosing or prescribing medication. *See also* Ind. Code § 25-1-9.5-4 (omitting LPNs from the list of medical professionals who may be a "prescriber"); Ind. Code § 25-1-9.3-5 (same).

There are no allegations that LPN Johnson was refusing to carry out instructions from a licensed physician or registered nurse. Rather, she repeatedly told Mr. Riggs what he had already directly experienced in his interactions with Dr. Millikan: that Dr. Millikan was aware of Mr. Riggs's

8

complaints, symptoms, and medical testing and was extremely reluctant to provide any additional or different treatment for Mr. Riggs. LPN Johnson herself could not prescribe a different course of treatment or medication for Mr. Riggs. To the extent LPN Johnson might have told Mr. Riggs on more than one occasion that she would try to schedule an appointment with Dr. Millikan and no such appointment ever occurred, that would be consistent with Dr. Millikan's alleged reluctance over the preceding months to respond to Mr. Riggs's HCRFs, and/or Mr. Riggs's difficulty in scheduling appointments with Dr. Millikan. There are insufficient allegations of deliberate indifference on LPN Johnson's part or that she was personally responsible for any allegedly deficient medical care he received. All claims against LPN Johnson **are dismissed**.

The claims that **shall proceed** in this action are the following: Eighth Amendment deliberate indifference claims against Dr. Millikan and mental health provider Ms. Heinmann,[2] as well as state medical malpractice claims against both providers. A *Monell* claim also shall proceed against Centurion based on the allegation that it had a practice, policy, or custom of deliberately delaying care for inmates who were due to be released from prison in the near future without regard for the medical necessity of the care.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that

---

[2] At the pleading stage, the Court concludes it could potentially constitute deliberate indifference or malpractice for a mental health provider to disregard a patient's claims of psychological distress solely because that distress happens to arise from or be related to a physical condition.

additional claims were alleged in the complaint, but not identified by the Court, he shall have **through August 31, 2026,** in which to file a motion to reconsider the screening order.

### IV. Motion for Appointment of Expert

Mr. Riggs has filed a motion requesting that the Court appoint an expert medical witness in this matter. Rule 706(a) of the Federal Rules of Evidence allows appointment of a neutral expert witness if the Court determines that such an expert is necessary to help the trier of fact understand complex information. *See Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016); *Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997). To the extent that Mr. Riggs seeks an expert to present his position, this is not intended by Rule 706(a). The purpose of this Rule is to allow the Court to obtain neutral expert testimony when "scientific or specialized knowledge will help the court to understand the evidence or decide a disputed fact." *Elcock v. Davidson*, 561 F. App'x 519, 524 (7th Cir. 2014). The Court "need not appoint an expert for a party's own benefit." *Turner v. Cox*, 569 F. App'x 463, 468 (7th Cir. 2014) (cleaned up). It is premature at this point to consider whether an independent Court-appointed medical expert is needed in this matter. Mr. Riggs's motion for such an appointment is **DENIED without prejudice**. Dkt. [2].

### V. Motion for Counsel

Mr. Riggs has filed a motion for assistance recruiting counsel. Dkt. 3. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018).

Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers).

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Plaintiff has attempted to contact multiple attorneys with requests for representation without success. The Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. He should continue his efforts to find counsel.

11

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan, 987 F.3d at 682* (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655).

Mr. Riggs states that he has a high school education, and that he has no difficulty reading or writing English. He does state that he suffers from anxiety and depression, along with the physical problems associated with his cervical spine issue. However, his complaint is very coherent and indicates he fully understands the legal and factual issues in this case and had the capability to draft it. Mr. Riggs also indicates that he has no legal experience or knowledge. That, however, is a difficulty that almost all pro se litigants face and does not by itself warrant recruitment of counsel.

Finally, the Court observes that Plaintiff requested counsel the same day he filed his complaint. The Seventh Circuit has found that "until the defendants respond to the complaint, the plaintiff's need for assistance of counsel . . . cannot be gauged." *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013); *see also Watts*, 42 F.4th at 766 ("It is essential that district courts remain mindful, especially at the early stages of a case, that their evaluation of the plaintiff's claim is being made on uncounseled papers."). Although that statement from *Kadamovas* is not a "bright-line rule[]," in this case, Plaintiff has not shown a need for assistance of counsel in preparing the complaint or to "investigate and flesh out any claim that may exist." *Mapes v. Indiana*, 932 F.3d 968, 971-72 (7th Cir. 2019).

Plaintiff's motion for appointment of counsel, dkt. [3], is **denied without prejudice**. If Plaintiff wishes to renew his motion at a later point, he should not do so until *after* Defendants have filed an answer to the complaint.

## VI. Conclusion and Service of Process

The following claims are proceeding in this action: Eighth Amendment deliberate indifference claims against Dr. Millikan and mental health provider Ms. Heinmann, as well as state medical malpractice claims against both providers, and a *Monell* claim against Centurion. All other claims have been dismissed.

The **clerk is directed** to terminate Johnson, Jacobs, Runyan, and The Geo Group as defendants on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Dr. Thomas Millikan, Centurion Health of Indiana, LLC, and mental health provider Ms. Heinmann in the manner specified by Rule 4(d). Process shall consist of the complaint filed on June 25, 2026, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

Defendants Dr. Millikan and Ms. Heinmann appear to be employees of Centurion. Centurion is **ORDERED** to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed ex parte.

The **clerk is directed** to serve Centurion and its employees electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Mr. Riggs's motions for appointment of a medical expert and for recruitment of counsel are **DENIED without prejudice**. Dkts. [2], [3].

**SO ORDERED.**

Date: 7/31/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Electronic service to Centurion and employees
    Dr. Thomas Millikan
    Ms. Heinmann, mental health provider

14

AARON LEON RIGGS, II
288532
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box A
NEW CASTLE, IN 47362